IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2013 Term

_____

No. 12-0195

_____

**FILED**

**June 17, 2013**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

OFFICE OF DISCIPLINARY COUNSEL,
Petitioner

v.

H. JOHN ROGERS,
Respondent

_____

LAWYER DISCIPLINARY PROCEEDING

LICENSE ANNULLED

_____

Submitted: June 4, 2013
Filed: June 17, 2013

Andrea J. Hinerman, Esq.                          George A. Daugherty, Esq.
Senior Lawyer Disciplinary Counsel                Dunbar, West Virginia
Office of Disciplinary Counsel                    Attorney for Respondent
Charleston, West Virginia
Attorney for Petitioner

The Opinion of the Court was delivered PER CURIAM.

CHIEF JUSTICE BENJAMIN, deeming himself disqualified, did not participate.
JUSTICE MCHUGH, sitting by temporary assignment.

SYLLABUS BY THE COURT


1.      "A *de novo* standard applies to a review of the adjudicatory record made before the Committee on Legal Ethics of the West Virginia State Bar [currently, the Hearing Panel Subcommittee of the Lawyer Disciplinary Board] as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the Committee's recommendations while ultimately exercising its own independent judgement.  On the other hand, substantial deference is given to the Committee's findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record."  Syllabus Point 3, *Committee on Legal Ethics of the West Virginia State Bar v. McCorkle*, 192 W.Va. 286, 452 S.E.2d 377 (1994).


2.      "In deciding on the appropriate disciplinary action for ethical violations, this Court must consider not only what steps would appropriately punish the respondent attorney, but also whether the discipline imposed is adequate to serve as an effective deterrent to other members of the Bar and at the same time restore public confidence in the ethical standards of the legal profession." Syllabus Point 3, *Committee on Legal Ethics of the West Virginia State Bar v. Walker*, 178 W.Va. 150, 358 S.E.2d 234 (1987).

Per curiam:

This is a lawyer disciplinary proceeding brought against H. John Rogers by the Office of Disciplinary Counsel ("the ODC") on behalf of the Lawyer Disciplinary Board ("the Board"). The ethical violations against Mr. Rogers stem from his *nolo contendere* plea to one count of "false swearing" in violation of *W.Va. Code* §§ 61-5-2 [1923] and 61-5-3 [1923] and one count of "malicious application to declare a person mentally ill or inebriate" in violation of *W.Va. Code* § 27-12-1 [2010]. A Hearing Panel Subcommittee of the Board determined that Mr. Rogers violated three *Rules of Professional Conduct* and recommended a number of sanctions including the annulment of his law license.

Having considered all matters of record, we agree with the Panel's recommendations, conclusions of law and recommended sanctions. We therefore annul Mr. Rogers's license to practice law and impose the other sanctions recommended by the Panel.

## I.
## Standard of Review: Disciplinary Actions

In *Committee on Legal Ethics of the West Virginia State Bar v. McCorkle*, 192 W.Va. 286, 289, 452 S.E.2d 377, 380 (1994), this Court took the opportunity to "resolve any doubt as to the applicable standard of judicial review" in lawyer disciplinary cases. Syllabus Point 3 of *McCorkle* holds:

> A *de novo* standard applies to a review of the adjudicatory record made before the Committee on Legal Ethics

1

of the West Virginia State Bar [currently, the Hearing Panel Subcommittee of the Lawyer Disciplinary Board] as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the Committee's recommendations while ultimately exercising its own independent judgment. On the other hand, substantial deference is given to the Committee's findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record.

The above standard of review is consistent with this Court's ultimate authority with regard to legal ethics matters. Syllabus Point 3 of *Committee on Legal Ethics of the West Virginia State Bar v. Blair*, 174 W.Va. 494, 327 S.E.2d 671 (1984), states "[t]his Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions or annulments of attorneys' licenses to practice law."

Rule 3.7 of the *West Virginia Rules of Lawyer Disciplinary Procedure* provides that, in order to recommend the imposition of discipline of a lawyer, "the allegations of the formal charge must be proved by clear and convincing evidence." *See also* Syllabus Point 2, *Lawyer Disciplinary Bd. v. Cunningham*, 195 W.Va. 27, 464 S.E.2d 181 (1995). The various sanctions which may be recommended to this Court are set forth in Rule 3.15.[1]

---

[1] Rule 3.15 of the *West Virginia Rules of Lawyer Disciplinary Procedure* provides:
> A Hearing Panel Subcommittee may recommend or the Supreme Court of Appeals may impose any one or more of the following sanctions for a violation of the *Rules of Professional Conduct* . . . (1) probation; (2) restitution; (3) limitation on the nature or extent of future practice; (4) supervised practice; (5) community service; (6) admonishment; (7) reprimand; (8) suspension; or (9) annulment. When a sanction is imposed the Hearing Panel

(continued...)

2

With this background in mind, we proceed to examine the present case.

## II.
## Factual Background, Charged Violations and Analysis

Mr. Rogers is a member of the West Virginia State Bar who practices law in New Martinsville, West Virginia. He was admitted to the West Virginia State Bar in 1966. On February 16, 2012, the ODC filed a petition seeking the annulment of Mr. Rogers's law license. In this opinion we will review the factual circumstances giving rise to the ethical violations filed against Mr. Rogers, consider the aggravating and mitigating factors that are applicable, and review the Hearing Panel Subcommittee's recommended sanctions.

### A. Factual Background & Charged Violations[2]

On the morning of July 27, 2009, Mr. Rogers entered Baristas Cafe in New Martinsville, West Virginia and began yelling, using profanity and gesturing to Jeffrey Shade ("Mr. Shade"), one of the owners of the cafe. Mr. Shade testified that Mr. Rogers "had come from the Court Restaurant and he came in and he was saying 'I showed those motherfuckers

_____

[1](...continued)
> Subcommittee may recommend and the Court may order the lawyer to reimburse the Lawyer Disciplinary Board for the costs of the proceeding. Willful failure to reimburse the Board may be punished as contempt of the Court.

[2]The factual information comes from the Hearing Panel Subcommittee's March 29, 2013, report and the record presented for our review.

down at the courthouse this morning.'" According to Mr. Shade, Mr. Rogers then pointed at him and said "[a]nd you're next on my list."[3] Mr. Shade told Mr. Rogers that he would not tolerate that behavior in his cafe. Mr. Shade testified that he had previously asked Mr. Rogers not to harass his customers "because there had been a short history of him saying things to our customers and using profanity, which isn't good for local business." Mr. Rogers left the cafe shortly after this incident occurred.

A second incident occurred later that day at approximately 5:00 p.m. when Mr. Rogers returned to the cafe. Upon entering the cafe the second time, Mr. Rogers began yelling and gesturing at the cafe's customers and employees. During this incident, Mr. Rogers said "hear no evil, see no evil," and then pointed at Mr. Shade and said "pure evil." Mr. Shade stated that he told Mr. Rogers he had "crossed the line" and told him "I don't want you to ever come back again." Mr. Rogers responded by asking Mr. Shade to step outside. Mr. Shade agreed and met Mr. Rogers on the cafe's front porch. Mr. Shade testified that Mr. Rogers

---

[3]Jill Shade, a co-owner of the cafe and ex-wife of Mr. Shade, was also present that morning. She stated

> [t]he first time he [Mr. Rogers] came in in the morning, he came in ranting and raving about something down at the court, used some derogatory words to talk about the people at the Court Restaurant, and I wasn't paying a whole lot of attention, but he pointed over at Jeff, who was standing on the stairs, and he said "And you're next." . . . . And Jeff basically told him he needed to stop his stuff or get out, that we didn't need that kind of talk or energy in the shop.

4

was angry on the front porch, he was angry and he said "You're messing with the wrong motherfucker. I'll bust a cap in your ass." And at that point, I became angry and I said, "Off, out now, you're out of here." And as he walked down the steps, I recall him saying "You'll be hearing from me," and then a couple days later, I heard from him via the local police department.

Mr. Shade reported this threat to the New Martinsville Police Department.

One day after Mr. Shade told Mr. Rogers not to return to the cafe, Mr. Rogers filed a notarized Application for Involuntary Custody for Mental Health Examination ("involuntary mental hygiene petition") against Mr. Shade. In this notarized document, Mr. Rogers alleged that Mr. Shade was suicidal, that he was on drugs and that Mr. Shade had physically assaulted him twice on July 27, 2009, "with no provocation." After the involuntary mental hygiene petition was filed, Mr. Shade was walking with his son, who had just performed in a play at a local theater, when he was picked up by the Wetzel County Sheriff's Department and taken to the Hillcrest Behavioral Health Center.[4] Mr. Shade described his arrival at the facility as follows,

> First, they stripped me down and put a robe on me, and then they sent me down the hallway to pee in a cup, and then I recall that they called in a couple more security guards. So I had three security guards outside of my emergency room . . . . And that's where I was at for six hours in the middle of the night.

---

[4]Hillcrest is a secure in-patient facility which offers behavioral health services for people needing psychiatric, behavioral or chemical dependancy care. Hillcrest is a part of Ohio Valley Medical Center Hospital in Wheeling, West Virginia.

Mr. Shade spent the night at Hillcrest. He was examined by medical staff and underwent medical tests, including a drug screen and a psychiatric evaluation. The drug screen was negative. The psychologist who examined Mr. Shade called the mental hygiene commissioner and stated that he believed the petition filed against Mr. Shade was fraudulent. After the results of these tests were examined and considered by the mental hygiene commissioner, the petition against Mr. Shade was dismissed for lack of probable cause. Mr. Shade was released from Hillcrest on the afternoon of July 29, 2009.

While Mr. Shade was undergoing his mental hygiene evaluation, Mr. Rogers filed a complaint against Mr. Shade with the Massage Therapy Licensing Board.[5] In this complaint, Mr. Rogers swore under oath that Mr. Shade "physically assaulted me twice . . . on July 27 with no provocation." Mr. Rogers later moved to dismiss this complaint after an investigator from the Massage Therapy Licensing Board traveled to New Martinsville to interview Mr. Shade and Mr. Rogers.

On January 25, 2010, a Wetzel County Grand Jury issued a two-count indictment against Mr. Rogers, charging him with one count of "malicious application to declare a person mentally ill or inebriate" in violation of *W.Va. Code* § 27-12-1, and one count of "false swearing" in violation of *W.Va. Code* §§ 61-5-2 and 61-5-3. Count one of the indictment charged that Mr. Rogers "unlawfully, wilfully and maliciously made

---

[5]In addition to being a co-owner of Baristas Cafe, Mr. Shade is a licensed massage therapist.

6

application . . . seeking the involuntary hospitalization of one Jeffrey Shade, and to thereby declare said Jeffrey Shade to be mentally ill, or an inebriate, in violation of [*W.Va. Code* § 27-12-1]." Count two of the indictment charged that Mr. Rogers

> did unlawfully, knowingly and intentionally, but not feloniously, swear falsely, under oath or affirmation lawfully administered, concerning a matter or thing in a petition and application for involuntary custody for mental health examination of one Jeffrey Shade . . . . that the said Herbert John Rogers did swear falsely in paragraph 12 therein as follows: "He physically assaulted me twice, at 9:30 a.m. and 5:00 p.m. on July 27 with no provocation."

On November 30, 2011, Mr. Rogers pled *nolo contendere* to both counts contained in the indictment. On January 23, 2012, the magistrate court entered its sentencing order. It ordered Mr. Rogers to pay a fine and gave him a ninety day suspended jail sentence for count one. Mr. Rogers was ordered to pay a fine and sentenced to ninety days in jail, with eighty days suspended, for count two.[6] Mr. Rogers appealed his criminal conviction to the Circuit Court of Wetzel County. By order entered on August 28, 2012, the Circuit Court of Wetzel County denied Mr. Rogers's appeal and ordered that his ten-day jail sentence be served through home incarceration.[7] Mr. Rogers thereafter filed a Notice of Appeal with this Court on September 27, 2012, and a scheduling order was entered on October 12, 2012. By order

---

[6]Mr. Rogers was effectively sentenced to spend ten days in the regional jail.

[7]The ODC failed to include the circuit court's August 28, 2012, order in the appendix-record. This Court takes judicial notice of the circuit court's order pursuant to Rule 201 of the *West Virginia Rules of Evidence*.

entered on February 8, 2013, this Court dismissed Mr. Rogers's appeal of his criminal convictions because it was not timely filed.[8]

On February 16, 2012, the ODC filed a petition with this Court seeking the annulment of Mr. Rogers's law license. Mr. Rogers requested and received a mitigation hearing before a Hearing Panel Subcommittee of the Lawyer Disciplinary Board. At this mitigation hearing, Mr. Rogers told the Panel that Mr. Shade was the physical aggressor during both incidents in the cafe on July 27, 2009. Mr. Rogers stated that Mr. Shade put a "bear hug" on him and shoved him out the front door. Mr. Rogers also stated that his purpose in filing the mental hygiene petition against Mr. Shade was to assist Mr. Shade in his recovery from drug addiction.

Mr. Shade offered an entirely different version of his interaction with Mr. Rogers. Mr. Shade testified that there was no physical altercation between the two men on July 27, 2009. He also testified that he did not have any suicidal thoughts and was not addicted to drugs. Mr. Shade's drug screen at Hillcrest was negative for all drugs tested. James Long, a patron at the cafe on July 27, 2009, testified before the Panel that he did not

---

[8]The deadline for perfecting the appeal, in accord with the jurisdictional four-month appeal period, was set forth in the scheduling order as December 31, 2012. Mr. Rogers appeal was not perfected on or before December 31, 2012. On January 2, 2013, Mr. Rogers submitted a brief that was returned to him on January 16, 2013, as not being in compliance with the Rules and being untimely filed. At that time, Mr. Rogers was directed to properly perfect the appeal within ten days and directed to include a motion to perfect the appeal out of time, citing good cause for the untimeliness. This Court concluded that Mr. Rogers failed to show good cause for extending the time period to perfect his appeal and dismissed his appeal on February 8, 2013.

see Mr. Shade touch Mr. Rogers. Similarly, Jill Shade testified that Mr. Shade did not physically assault Mr. Rogers at the cafe on July 27, 2009.

At the conclusion of the mitigation hearing, the Hearing Panel Subcommittee found that

> because he knowingly and intentionally entered a plea of nolo contendere to the crimes of false swearing and of unlawfully, wilfully and maliciously making an application, or caused an application to be made to the Circuit Court of Wetzel County, and the Mental Hygiene Commissioner of said Court which sought and did result in the involuntary hospitalization of Mr. Shade, and has been convicted of the same, Respondent [Mr. Rogers] has violated Rule 8.4(b), Rule 8.4(c) and Rule 8.4(d) of the Rules of Professional Conduct[.]

Rules 8.4(b), 8.4(c) and 8.4(d) of the *Rules of Professional Conduct* are as follows:

> Rule 8.4 Misconduct
>
> It is professional misconduct for a lawyer to: . . . .
>
> b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;
> c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
> d) engage in conduct that is prejudicial to the administration of justice.

The record before us overwhelmingly supports the Panel's conclusion that Mr. Rogers violated Rules 8.4(b), 8.4(c) and 8.4(d) of the *Rules of Professional Conduct*.[9] Under

---

[9]Under our disciplinary rules, the ODC must prove its case by clear and convincing evidence. Syllabus Point 1, in part, *Lawyer Disciplinary Bd. v. McGraw*, 194 W.Va. 788, 461 S.E.2d 850 (1995) ("Rule 3.7 of the Rules of Lawyer Disciplinary Procedure . . . requires the Office of Disciplinary Counsel to prove the allegations of the formal charge by clear and

(continued...)

Rule 3.18(c) of our *Rules of Lawyer Disciplinary Procedure*, "[a] plea or verdict of guilty or a conviction after a plea of nolo contendere shall be deemed to be a conviction within the meaning of this rule."[10] Syllabus Point 2 of *Committee on Legal Ethics of the West Virginia State Bar v. Six*, 181 W.Va. 52, 380 S.E.2d 219 (1989), states "[w]here there has been a final criminal conviction, proof on the record of such conviction satisfies the Committee on Legal Ethics' burden of proving an ethical violation arising from such conviction." Thus, the *nolo contendere* plea provides a sufficient basis to support the Panel's finding that Mr. Rogers violated Rules 8.4(b), 8.4(c) and 8.4(d) of the *Rules of Professional Conduct*. In addition to Mr. Rogers's *nolo contendere* plea, the testimony of Mr. Shade, Jill Shade and James Long supports the Panel's conclusion that Mr. Rogers violated Rules 8.4(b), 8.4(c) and 8.4(d) of the *Rules of Professional Conduct*.

## B. Sanctions

After finding that Mr. Rogers violated three *Rules of Professional Conduct*, the Hearing Panel Subcommittee recommended the following sanctions: (1) that Mr. Rogers's law license be annulled; (2) that prior to any petition for reinstatement of his law license, Mr.

---

[9](...continued)
convincing evidence."). However, in keeping with our established standard of review, the evidentiary findings of the Hearing Panel Subcommittee are afforded substantial deference.

[10]Rule 3.18(d) of our *Rules of Lawyer Disciplinary Procedure* provides that "[a] lawyer shall be deemed to have been convicted within the meaning of this rule upon the entry of the order or judgment of conviction and such lawyer's license may be suspended or annulled thereupon notwithstanding the pendency of an appeal from such conviction."

Rogers shall undergo a comprehensive psychological examination by an independent licensed psychiatrist to determine if he is fit to practice law; (3) that Mr. Rogers fully comply with any and all treatment protocol expressed by this licensed psychiatrist; (4) that prior to petitioning for reinstatement, Mr. Rogers pay the costs of the lawyer disciplinary proceedings pursuant to Rule 3.15 of the *Rules of Lawyer Disciplinary Procedure*; and (5) that upon reinstatement, Mr. Rogers's practice be supervised for a period of one year.

In reviewing the sanctions recommended by the Hearing Panel Subcommittee, the factors this Court typically considers include

> (1) whether the lawyer has violated a duty owed to a client, to the public, to the legal system, or to the profession; (2) whether the lawyer acted intentionally, knowingly, or negligently; (3) the amount of the actual or potential injury caused by the lawyer's misconduct; and (4) the existence of any aggravating or mitigating factors.

Syllabus Point 4, in part, *Office of Lawyer Disciplinary Counsel v. Jordan*, 204 W.Va. 495, 513 S.E.2d 722 (1998). We are also mindful that

> [i]n deciding on the appropriate disciplinary action for ethical violations, this Court must consider not only what steps would appropriately punish the respondent attorney, but also whether the discipline imposed is adequate to serve as an effective deterrent to other members of the Bar and at the same time restore public confidence in the ethical standards of the legal profession.

Syllabus Point 3, *Committee on Legal Ethics of the West Virginia State Bar v. Walker*, 178

W.Va. 150, 358 S.E.2d 234 (1987).[11]

   Our first inquiry is whether Mr. Rogers has violated a duty owed to a client,

to the public, to the legal system, or to the profession. The Hearing Panel Subcommittee

found that "[a]s a duly licensed attorney and an officer of the Court, [Mr. Rogers] has an

affirmative duty to comport his actions to that of the laws of this State and has therefore . .

. . violated his duties to the public, the legal system and the profession." We agree. In

*Lawyer Disciplinary Board v. Stanton*, 225 W.Va. 671, 678, 695 S.E.2d 901, 908 (2010), the

Court discussed the ethical standards a lawyer is expected to maintain:

> The public expects lawyers to exhibit the highest standards [of]
> integrity and honesty. Lawyers have a duty not to engage in
> conduct involving dishonesty, fraud, or interference with the
> administration of justice. Lawyers are officers of the court and
> must operate within the bounds of the law and act in a manner
> to maintain the integrity of the Bar.

Mr. Rogers pled *nolo contendere* to the misdemeanor crimes of false swearing and filing a

malicious application to declare a person mentally ill or inebriate. These acts of dishonesty

resulted in Mr. Shade being detained by a police officer in front of his son and being

deprived of his personal freedom. Additionally, Mr. Shade testified to his belief that Mr.

---

[11] "[A]ttorney disciplinary proceedings are primarily designed to protect the public, to reassure it as to the reliability and integrity of attorneys and to safeguard its interest in the administration of justice." *Committee on Legal Ethics of the West Virginia State Bar v. Keenan*, 192 W.Va. 90, 94, 450 S.E.2d 787, 791 (1994). *Accord, Lawyer Disciplinary Bd. v. Sims*, 212 W.Va. 463, 469, 574 S.E.2d 795, 801 (2002) (per curiam) (Davis, J., concurring, in part, and dissenting, in part).

12

Rogers was able to perpetrate these illegal actions against him because he was a lawyer. Mr. Shade stated, "I just thought, you know, I need to maybe go to law school and become part of the gang, otherwise, you're subject to these kind of tactics." We find that Mr. Rogers's conduct in this matter falls woefully short of the obligations a lawyer owes to the public, to the legal system and to the profession.

We next consider whether Mr. Rogers acted intentionally, knowingly or negligently. The Panel found, and we agree, that Mr. Rogers knowingly and voluntarily filed the fraudulent involuntary mental hygiene petition against Mr. Shade. The panel also found that Mr. Rogers knowingly and voluntarily pled *nolo contendere* to the misdemeanor crimes of false swearing and filing a malicious application to declare a person mentally ill or inebriate. While Mr. Rogers has offered a variety of reasons explaining why he entered this plea, there is no dispute that it was made voluntarily.

Next, we consider the amount of the actual or potential injury caused by Mr. Rogers's misconduct. In this case, Mr. Rogers filed a baseless involuntary mental hygiene petition against Mr. Shade that resulted in Mr. Shade being detained by a police officer in front of his child. Mr. Shade was also forced to undergo drug and psychological testing and was forced to spend the night in a mental health facility. In addition to depriving Mr. Shade of his personal freedom, Mr. Rogers attempted to revoke Mr. Shade's message therapy license by filing a complaint against him with the Massage Therapy Licensing Board.

Along with the significant injury suffered by Mr. Shade, the Hearing Panel Subcommittee also found that Mr. Rogers's misconduct "wasted the time and the valuable resources of both the medical and judicial systems of Wetzel County and the State of West Virginia." We agree. Mr. Rogers's misconduct resulted in actual injury to Mr. Shade and to the medical and judicial systems of Wetzel County. We find Mr. Rogers's conduct to be reprehensible.

The next determination in our review is the existence of any aggravating or mitigating factors. This Court has held that "[a]ggravating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify an increase in the degree of discipline to be imposed." Syllabus Point 4, *Lawyer Disciplinary Bd. v. Scott*, 213 W.Va. 209, 579 S.E.2d 550 (2003).

The Hearing Panel Subcommittee found the existence of the following aggravating factors: (1) dishonest or selfish motive, (2) refusal to acknowledge the wrongful nature of conduct, (3) substantial experience in the practice of law, and (4) illegal conduct. We agree with the Hearing Panel Subcommittee's determination that these four aggravating factors are present in this case. We find it troubling that Mr. Rogers has refused to acknowledge the wrongful nature of his conduct. Mr. Rogers continues to assert that he was attempting to help Mr. Shade overcome a drug problem, despite Mr. Shade's negative drug test. Further, Mr. Rogers continues to insist that he is the victim in this matter and that Mr. Shade physically assaulted him on July 27, 2009. Mr. Rogers fails to offer any rational

14

explanation as to why he pled *nolo contendere* to the two criminal charges filed against him in light of his argument that he was the victim in this matter.

Mr. Rogers argues that his *nolo contendere* plea was "uncounseled" and suggests that he was unaware of the consequences of such a plea. Mr. Rogers is a lawyer who has practiced law for over four decades. His *nolo contendere* plea was entered approximately two years after the criminal proceedings against him began. Mr. Rogers filed numerous motions during the underlying criminal matter. He offers no support for his position that his "uncounseled" plea was somehow hastily entered into and that he was unaware of the consequences resulting from this plea.

Substantial experience is deemed to be an aggravating factor, while lack of experience as a lawyer is considered to be a mitigating factor. This distinction is made in recognition of the fact that "a youthful and inexperienced attorney may have [engaged in misconduct] as a result of inexperience rather than as a result of deliberate calculation." *In re Brown*, 166 W.Va. 226, 235, 273 S.E.2d 567, 572 (1980). Mr. Rogers was admitted to the practice of law in this state in 1966. At the time of his misconduct in this case he had been practicing law for over forty years. Thus, Mr. Rogers has substantial experience as a lawyer and the Hearing Panel correctly found this to be an aggravating factor.

We next consider whether any mitigating factors are present. We have previously held that "[m]itigating factors in a lawyer disciplinary proceeding are any

15

considerations or factors that may justify a reduction in the degree of discipline to be imposed." Syllabus Point 2, *Scott*, *supra*. In *Scott*, we further explained:

> Mitigating factors which may be considered in determining the appropriate sanction to be imposed against a lawyer for violating the Rules of Professional Conduct include: (1) absence of a prior disciplinary record; (2) absence of a dishonest or selfish motive; (3) personal or emotional problems; (4) timely good faith effort to make restitution or to rectify consequences of misconduct; (5) full and free disclosure to disciplinary board or cooperative attitude toward proceedings; (6) inexperience in the practice of law; (7) character or reputation; (8) physical or mental disability or impairment; (9) delay in disciplinary proceedings; (10) interim rehabilitation; (11) imposition of other penalties or sanctions; (12) remorse; and (13) remoteness of prior offenses.

Syllabus Point 3, *Scott*, *supra*.

The Hearing Panel Subcommittee found that Mr. Rogers's testimony suggested[12] that the following mitigating factors could apply: (1) absence of a dishonest or selfish motive; (2) full and free disclosure to the Disciplinary Board or cooperative attitude toward proceedings; (3) character or reputation; (4) imposition of other penalties and sanctions and (5) remorse. These mitigating factors are based, in part, on Mr. Rogers's testimony before the Panel that his purpose for filing the involuntary mental hygiene petition was to assist Mr. Shade in his recovery from drug addiction. As discussed throughout this opinion, Mr. Rogers's testimony before the Panel is at odds with the testimony of other

---

[12]The Panel did not conclude that these mitigating factors are present in this case. Instead, the Panel simply stated "Respondent's [Mr. Rogers's] statements would suggest the following mitigating factors[.]"

16

witnesses and with the medical evidence in the record showing that Mr. Shade's drug test was negative.[13]

The Panel found that "remorse" was a possible mitigating factor in this case. We find nothing in the record or Mr. Rogers's brief to this Court that supports this finding. Mr. Rogers continues to argue that he was physically assaulted by Mr. Shade and that he filed the involuntary mental hygiene petition out of concern for Mr. Shade's well-being. These arguments are not supported by the record before us. Mr. Rogers has failed to demonstrate any appreciation for the considerable harm he has caused to Mr. Shade.

Based on all of the above, we find that the aggravating factors outweigh the mitigating factors suggested by Mr. Rogers.

---

[13]During oral argument in this matter, counsel for Mr. Rogers argued that the involuntary mental hygiene petition was an attempt by Mr. Rogers to stage an "intervention" for Mr. Shade. Similarly, Mr. Rogers asserts in his brief that he has engaged in numerous "interventions over the years," and that he has a "decades long history of working with addicts, alcoholics, and their families." Mr. Rogers's claim that he filed the petition against Mr. Shade for altruistic reasons is belied by the fact that Mr. Rogers pled *nolo contendere* to the two criminal charges filed against him. Similarly, if Mr. Rogers had spent decades staging interventions for addicts by working with the addicts and their families, he fails to explain why he did not contact Mr. Shade's family prior to filing the involuntary mental hygiene petition in this case. There is no evidence in the record that Mr. Rogers made any attempt to work with Mr. Shade's family, friends, or any substance abuse counselor to stage an "intervention" for Mr. Shade. Instead, the record shows that after having two confrontations with Mr. Shade at the cafe, Mr. Rogers hastily filed both an involuntary mental hygiene petition and a complaint with the massage therapy licensing board against Mr. Shade.

When weighing all of the factors to be considered in imposing sanctions, we find that the annulment of Mr. Rogers's license to practice law is appropriate. In devising suitable sanctions for attorney misconduct, we have recognized that "[a]ttorney disciplinary proceedings are not designed solely to punish the attorney, but rather to protect the public, to reassure it as to the reliability and integrity of attorneys and to safeguard its interest in the administration of justice." *Lawyer Disciplinary Bd. v. Taylor*, 192 W.Va. 139, 144, 451 S.E.2d 440, 445 (1994). Similarly, in Syllabus Point 2 of *In re Daniel*, 153 W.Va. 839, 173 S.E.2d 153 (1970), we stated "[d]isbarment of an attorney to practice law is not used solely to punish the attorney but is for the protection of the public and the profession." Because Mr. Rogers exploited his knowledge of the law and our legal system to carry out a personal vendetta that resulted in a citizen of this state being involuntarily confined in a mental health care facility, we must send a strong message to the bar and to the public that this conduct will not be tolerated. This Court has recognized that

> [w]oven throughout our disciplinary cases involving attorneys is the thought that they occupy a special position because they are actively involved in administering the legal system whose ultimate goal is the evenhanded administration of justice. Integrity and honor are critical components of a lawyer's character as are a sense of duty and fairness. Because the legal system embraces the whole of society, the public has a vital expectation that it will be properly administered. From this expectancy arises the concept of preserving public confidences in the administration of justice by disciplining those lawyers who fail to conform to professional standards.

*In re Brown*, 166 W.Va. 226, 232, 273 S.E.2d 567, 570 (1980) (footnote omitted).

18

Annulling Mr. Rogers's law license is also consistent with standards 5.11 and 6.11 of the *ABA Model Standards for Imposing Lawyer Sanctions* which state:

> Standard 5.11. Disbarment is generally appropriate when . . . . (a) a lawyer engages in serious criminal conduct a necessary element of which includes intentional interference with the administration of justice, false swearing, misrepresentation, fraud . . . . or (b) a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice.

> Standard 6.11. Disbarment is generally appropriate when a lawyer, with the intent to deceive the court, makes a false statement, submits a false document, or improperly withholds material information, and causes serious or potentially serious injury to a party, or causes a significant or potentially significant adverse effect on the legal proceeding.

We believe that annulling Mr. Rogers's law license will accomplish the goals of our disciplinary system by punishing Mr. Rogers, restoring public confidence in the ethical standards of our profession and serving as a deterrent to other members of the bar.

## IV.
## Conclusion

For the foregoing reasons, we impose the following sanctions: (1) that Mr. Rogers's law license be annulled; (2) that prior to any petition for reinstatement of his law license, Mr. Rogers shall undergo a comprehensive psychological examination by an independent licensed psychiatrist to determine if he is fit to practice law; (3) that Mr. Rogers fully comply with any and all treatment protocol expressed by this licensed psychiatrist; (4)

19

that prior to petitioning for reinstatement, Mr. Rogers pay the costs of the lawyer disciplinary proceedings pursuant to Rule 3.15 of the Rules of Lawyer Disciplinary Procedure; and (5) that upon reinstatement, Mr. Rogers's practice be supervised for a period of one year. The Clerk of this Court is ordered to issue the mandate forthwith.

Law license annulled and other sanctions imposed.