**IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA**

September 2014 Term

_____

No. 12-1172

_____

**FILED**

**September 30, 2014**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**LAWYER DISCIPLINARY BOARD,**
Petitioner

v.

**BENJAMIN F. WHITE,**
a member of the West Virginia State Bar,
Respondent

_____

Lawyer Disciplinary Proceeding

**REPRIMAND AND OTHER SANCTIONS**

_____

Submitted: September 10, 2014
Filed: September 30, 2014

**Rachael L. Fletcher Cipoletti, Esq.**
**Chief Lawyer Disciplinary Counsel**
**Office of Disciplinary Counsel**
**Charleston, West Virginia**
**Counsel for the Petitioner**

**Sherri Goodman Reveal, Esq.**
**Charleston, West Virginia**
**Counsel for the Respondent**

**JUSTICE KETCHUM delivered the Opinion of the Court.**

**SYLLABUS BY THE COURT**

1.      "Rule 3.7 of the *Rules of Lawyer Disciplinary Procedure*, effective July 1, 1994, requires the Office of Disciplinary Counsel to prove the allegations of the formal charge by clear and convincing evidence."  Syl. Pt. 1, in part, *Lawyer Disciplinary Bd. v. McGraw*, 194 W.Va. 788, 461 S.E.2d 850 (1995).

2.      "Rule 3.16 of the West Virginia Rules of Lawyer Disciplinary Procedure enumerates factors to be considered in imposing sanctions and provides as follows: 'In imposing a sanction after a finding of lawyer misconduct, unless otherwise provided in these rules, the Court [West Virginia Supreme Court of Appeals] or Board [Lawyer Disciplinary Board] shall consider the following factors: (1) whether the lawyer has violated a duty owed to a client, to the public, to the legal system, or to the profession; (2) whether the lawyer acted intentionally, knowingly, or negligently; (3) the amount of the actual or potential injury caused by the lawyer's misconduct; and (4) the existence of any aggravating or mitigating factors.'"  Syl. Pt. 4, *Office of Lawyer Disciplinary Counsel v. Jordan*, 204 W.Va. 495, 513 S.E.2d 722 (1998).

**Justice Ketchum:**

This disciplinary proceeding was instituted by the Office of Disciplinary Counsel ("ODC") of the West Virginia State Bar, against the Respondent, Benjamin F. White. The ODC asserted that White violated six *Rules of Professional Conduct* in a dispute over fees with his employer, a law firm.

However, a Hearing Panel Subcommittee of the Lawyer Disciplinary Board ("Board") found clear and convincing evidence that White violated only two *Rules of Professional Conduct*. The Board recommends that this Court reprimand White, order him to take an additional six hours of continuing legal education with a focus on legal ethics and law office management, and require him to pay the costs of the disciplinary hearing. The ODC objects to the Board's findings and recommendation and asserts that this Court should annul White's license to practice law.

Based upon our review, we conclude that the Board's findings are supported by the record. As set forth below, we adopt the Board's recommended sanctions.

### I.
### FACTUAL AND PROCEDURAL BACKGROUND

Lawyer White was admitted to the West Virginia Bar in 2005. In 2008, he joined the Hendrickson and Long ("H&L") law firm in Charleston, West Virginia, as an associate handling social security disability cases. White's annual compensation of $160,000 from the firm was to be paid half in salary and half in the form of a loan. At

1

the time of his hiring, White understood the fees generated by his social security disability cases would be credited against the loan. However, his employment agreement was silent on this issue.

White later learned that H&L was not crediting the social security disability fees he earned against his loan, and from February 2009 to May 2009, he withheld his incoming social security disability fees from H&L by keeping them in his desk drawer. H&L filed a complaint with the ODC from which this case originated.

### A. The Employment Agreement

In early 2008, White was practicing social security disability law at a law firm where he was earning approximately $160,000 per year. An H&L attorney initiated talks with White about joining H&L as a lawyer handling social security disability cases. White later met with H&L's founders, David Hendrickson ("Hendrickson") and Scott Long ("Long"), at Hendrickson's house to discuss his employment.

During this meeting, Hendrickson, Long, and White discussed White's salary, but they did not discuss how the fees from White's social security disability cases were to be split. White testified that he explained to Hendrickson and Long that he would not leave his current position for less than the $160,000 salary he was being paid by his present employer.

White testified that Hendrickson and Long orally agreed to pay him $160,000 per year but said $80,000 would be disguised as a "loan" because the other associates at H&L did not make that much money. White further testified that they

2

agreed that the loan would be paid back through "bonuses and a split [of social security disability fees]." The remaining $80,000 would be in the typical form of a salary.

Shortly thereafter, on March 25, 2008, H&L's office manager, Rick Fisher ("Fisher"), drafted a very short employment letter based on Hendrickson's recollection of the meeting. The letter failed to address whether any of the social security disability fees White earned would be applied against the loan. The letter states: "Your beginning salary will be $80,000 per year, plus a loan amount up to $80,000 per year, to be paid back from your bonus amounts. Terms of the loan will be under a separate agreement to be worked out mutually." However, H&L never attempted to work out a mutual agreement on the terms of the loan. The letter's salary amount plus the loan amount equaled $160,000, which is consistent with White's testimony regarding his accounting of the meeting.

White believed that the social security disability fees, along with bonuses, would be credited against his loan from H&L. There is no evidence that anyone told White that H&L interpreted the employment letter to mean that all social security disability fees would belong entirely to H&L and would not be used to pay the $80,000 loan.

Six months later, in September 2008, H&L unilaterally gave White a Line of Credit Promissory Note. The terms had not been worked out mutually as provided in the employment letter. White protested the note because it differed from the employment letter. The note changed the loan's designation to a "line of credit" that was available

3

only until December 31, 2009, and said that the principal must be repaid by May 1, 2011. White testified that he signed the note after Long assured him that it would not change their employment agreement and after Fisher threatened to withhold payment on the loan if White did not sign.

According to the promissory note, an employee bonus program controlled how the loan would be repaid. Fisher could not affirmatively testify that he remembered explaining the bonus plan to White. There is also no evidence that White received a copy of H&L's bonus plan. Additionally, there is no testimony that anyone at the firm told White that H&L's employee bonus plan would not include the social security disability fees earned by White.

One month after White received the promissory note, he learned that H&L was not crediting the social security disability fees he generated against the loan. Instead, he learned the bonus program required him to be "profitable" before he received any bonus amount at all.[1] In addition, H&L attributed $100,000 in overhead to White, which made it more difficult for him to become profitable and thus receive bonuses under the plan. White finally asked Fisher how much of the social security disability fees would be

---

[1] Fisher testified that to be "profitable" under H&L's bonus plan, an associate's profit must exceed his or her direct and indirect costs. Direct costs include salary, health insurance, parking costs, *etc*. Indirect costs include overhead. Nevertheless, even if an associate is "profitable" under this definition, the associate does not get a bonus unless the firm itself is profitable as well.

4

credited against the $80,000 loan, to which Fisher responded that he did not know what White was talking about.

## B. White's Employment at H&L

White began working for H&L in April 2008. At first, White's practice was to remit the social security disability fees to H&L as he received them, believing that H&L would credit these fees against his loan.[2] White continued to remit the social security disability fees even after he discovered that H&L was not crediting these fees against his loan because he believed he would be able to resolve his dispute with H&L.

In January 2009, H&L merged with a Pittsburgh based law firm, Eckert Seamans, and White began to feel uncertain regarding his future at either firm, much less his ability to resolve the dispute about the social security disability fees.[3] White claims that because of this uncertainty, he began withholding the social security disability fees from H&L and started to keep the checks for the fees in his desk drawer.[4]

---

[2] The checks were in White's name, not H&L's, because the Social Security Administration's policy is to accept only the name of individual lawyers as representatives, not law firms. Once the Social Security Administration approves a representative's fee, it issues a check payable to the individual lawyer. H&L was aware of this policy.

[3] H&L continued to exist after the merger.

[4] White testified as follows regarding the effect his uncertainty had on his misconduct:

> David would not talk to me. The folks at Eckert
> Seamans wouldn't talk to me about it. I had called them on
> some other issues and was advised not to call them ever

Continued . . .

5

White continued to keep the fees generated by his social security disability cases in his desk drawer for the next three months. In total, White withheld approximately $46,000 in social security fee disability checks, and he cashed $5,607.41 of these checks in April and in May, after he learned that Eckert Seamans decided not to hire him.

In May 2009, H&L learned that White was withholding social security disability fee checks from them when Fisher went into White's office one morning, without White's knowledge, and discovered scanned copies of withheld social security disability fee checks on White's computer. Hendrickson, Fisher, and White met regarding Fisher's discovery. According to White, when he tried to explain his position and offered to place the checks in escrow, Hendrickson screamed at him and told him to leave the building. Soon thereafter, H&L gave White a letter terminating him as an associate at H&L.

again. And in between there, Eckert Seamans had told [Fisher] to pay me with an H&L check and send them an invoice and they would reimburse my salary. And I didn't want to keep giving those monies without an understanding of getting those credited towards the loan because the loan had changed, the terms of it and now we have a new entity that owned the assets of H&L, and they purchased those and I was terribly confused with if I gave it to H&L, was it going into their account and be used for something else and not credited towards me [or] should it go to Eckert Seamans to be credited towards the $80,000.00. And no one would talk to me. . . . So I made the decision to keep those checks. I kept them in my desk drawer until late May with no intent on cashing them.

6

### C. The Lawyer Disciplinary Board's Findings

In June 2009, H&L reported White's actions to the ODC. In October 2012, the ODC filed formal charges against White alleging violations of six different *Rules of Professional Conduct*.[5]

The ODC charged that White failed to turn over social security disability fee checks that belonged to H&L and failed to keep these checks separate until the dispute with H&L had been resolved, in violation of Rules 1.15(a), (b), and (c). The ODC also charged White with violating Rules 8.4(c) and (d) by converting property that belonged to H&L, thereby engaging in conduct that was prejudicial to the administration of justice involving dishonesty, fraud, deceit, or misrepresentation.

The Board heard the matter in May 2013. It found that White violated Rules 1.15(b) and (c) when he withheld and subsequently cashed some of the fee checks. However, the Board found that White did not violate Rule 1.15(a) because the social security disability fees were subject to a bona fide business dispute, and the Board was not convinced that these fees belonged solely to H&L. The Board also found that White had a reasonable understanding that these fees would be split with H&L and credited against the loan.

---

[5] One of the charges the ODC asserted against White was that he violated Rule 3.4(c) because he knowingly failed to honor the agreed upon terms of a settlement agreement that arose out of civil litigation between White and H&L. However, the ODC now concedes that it cannot meet its burden to prove that White violated Rule 3.4(c), and Rule 3.4(c) is no longer at issue in this case.

Likewise, the Board determined that White did not violate Rules 8.4(c) or (d) because he did not affirmatively misrepresent his receipt of the funds or convert the social security disability fees.[6] The Board also considered Hendrickson's lack of credibility as a disciplinary hearing witness in its findings.[7]

Based on these findings, the Board recommends this Court impose the following sanctions on White: a reprimand, that he complete an additional six hours of continuing legal education with a focus on law office management and legal ethics, and that he be required to pay the costs of the disciplinary proceedings. The ODC now challenges the Board's findings that White did not violate Rules 1.15(a), 8.4(c), and 8.4(d), and it argues that White's license to practice law should be annulled.

## II.
## STANDARD OF REVIEW

The standard of review of a decision by the Board is as follows:

> A *de novo* standard applies to a review of the adjudicatory record made before the Committee on Legal Ethics of the West Virginia State Bar as to questions of law, questions of application of the law to the facts, and questions

---

[6] We caution that a lawyer who converts funds belonging to a third party may violate Rules 8.4(c) or (d) even if the lawyer does not affirmatively misrepresent his or her possession of the funds. *See Lawyer Disciplinary Bd. v. Ford*, 211 W.Va. 228, 230, 564 S.E.2d 438, 440 (2002).

[7] For example, the Board found the following facts indicative of Hendrickson's lack of credibility: (1) that Hendrickson initially claimed that White had no written employment contract with the firm, but he later introduced the March 25, 2008, letter as evidence of an employment contract; and (2) that he presented no evidence that anyone at the firm told White that he would have no interest in the social security disability fees.

of appropriate sanctions; this Court gives respectful consideration to the Committee's recommendations while ultimately exercising its own independent judgment. On the other hand, substantial deference is given to the Committee's findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record.

Syl. Pt. 3, *Comm. on Legal Ethics v. McCorkle*, 192 W.Va. 286, 452 S.E.2d 377 (1994).

Even though we give substantial deference to the Board's factual findings, this Court is the "final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions or annulments of attorneys' licenses to practice law." Syl. Pt. 3, *Comm. on Legal Ethics v. Blair*, 174 W.Va. 494, 327 S.E.2d 671 (1984). Furthermore, the ODC must prove its allegations against White by clear and convincing evidence. *See* Syl. Pt. 1, in part, *Lawyer Disciplinary Bd. v. McGraw*, 194 W.Va. 788, 461 S.E.2d 850 (1995) (citing to Rule 3.7 of the *Rules of Lawyer Disciplinary Procedure*).

## III.
## DISCUSSION

The ODC argues that the Board erred in finding that White did not violate Rules 1.15(a), 8.4(c), and 8.4(d). The ODC asserts that the Board should have found that White violated these rules and should have recommended that White's license be annulled. However, we accept the Board's findings because the ODC has not presented clear and convincing evidence that White violated Rules 1.15(a), 8.4(c), or 8.4(d). Further, we adopt the Board's recommended sanctions.

9

## A. Rules 1.15(a), (b), and (c)

The ODC argues that it is inconsistent for the Board to find that White violated Rules 1.15(b) and (c), but not Rule 1.15(a). We disagree with the ODC because paragraph (a) pertains to a different class of property than that covered by paragraphs (b) and (c).

In general, Rule 1.15 imposes duties upon lawyers for the safekeeping of the property of others. Rule 1.15(a) pertains to property belonging solely to a third party, someone other than the lawyer. Rule 1.15(a) states, in pertinent part, with emphasis added, "A lawyer shall hold *property of clients or third persons* that is in a lawyer's possession in connection with a representation separate from the lawyer's own property." Rules 1.15(b) and (c), however, pertain to property in which both the lawyer *and* another party may have an interest. Rule 1.15(b) says, in part:

> Upon receiving funds or other property in which *a client or third person has an interest*, a lawyer shall promptly notify the client or third person. . . . [A] lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive[.]

*Rule of Prof'l Conduct* 1.15 [2010] (emphasis added). Likewise, Rule 1.15(c) says, in part, with emphasis added: "When in the course of representation a lawyer is in possession of property *in which both the lawyer and another person claim interests*, the property shall be kept separate by the lawyer."

In this case, the ODC needed to show clear and convincing evidence that White violated Rule 1.15(a) by mishandling property that belonged solely to someone

10

else. The Board found that the ODC failed to meet this burden because ownership of the social security disability fees was reasonably in dispute and may have partly belonged to White. After reviewing the unique facts of this record, we are likewise not convinced that White violated Rule 1.15(a).

H&L created an ambiguous employment letter that was unclear as to the application of the social security disability fees from White's cases against his loan. The fact that H&L caused the ambiguity as to whether these fees would be credited against White's loan is one reason we are not convinced that White violated Rule 1.15(a). *See Lee v. Lee*, 228 W.Va. 483, 487, 721 S.E.2d 53, 57 (2011) ("'[I]n case of doubt, the construction of a written instrument is to be taken strongly against the party preparing it.'") (quoting *Henson v. Lamb*, 120 W.Va. 552, 558, 199 S.E. 459, 461-62 (1938)). Furthermore, H&L waited until White had quit his former job and been working at H&L for six months before unilaterally changing White's employment terms with the Line of Credit Promissory Note. There was no attempt to mutually agree on the loan terms as provided in the employment letter. There is also no evidence that anyone at H&L explained to White that H&L would not credit the social security disability fees against his loan.

The Board found White's interpretation of the agreement to be reasonable. For example, it considered the fact that White's "salary" plus his "loan" equaled $160,000, the exact amount White testified that he told H&L was the minimum pay for which he would work. By contrast, the Board found H&L's position to be less plausible

11

because White would have no incentive to leave a job where he made $160,000 per year to make half that much.

Another jurisdiction applied the same logic as the Board when, in substantially the same factual scenario, it found a lawyer to have violated the Wisconsin equivalents to our Rules 1.15(b) and (c), but to have not violated Rule 1.15(a). *See In re Disciplinary Proceedings against Gende*, 344 Wis. 2d 1, 6-14, 821 N.W.2d 393, 396-99 (2012) (lawyer kept proceeds in his desk drawer from his law firm pursuant to a "colorable claim" over ownership of the fees).

Under the limited facts of this case, where a lawyer kept property from a third party that was subject to a bona fide business dispute, and to which the lawyer reasonably believed he was entitled, the Board was correct in its findings that White violated Rules 1.15(b) and (c), but did not violate Rule 1.15(a). We find no basis to set aside the Board's findings.[8]

---

[8] We caution that our holding in this case does not mean that a lawyer can withhold disputed property and negate a Rule 1.15(a) violation by stating a groundless belief that they were entitled to do so. Rather, the dispute must be bona fide, and the belief must be reasonable. This Court has found Rule 1.15(a) violations when a lawyer withheld a third person's property subject to an unreasonable "dispute." *See, e.g.*, *Lawyer Disciplinary Bd. v. Martin*, 225 W.Va. 387, 395-96, 693 S.E.2d 461, 469-70 (2010) ("While [Mr. Martin] argues he performed sufficient work for the fee, the record does not support this assertion."); *Comm. on Legal Ethics v. Hess,* 186 W.Va. 514, 517, 413 S.E.2d 169, 172 (1991) ("Mr. Hess attempts to characterize his conversion of the funds as an internal business disagreement. There is nothing in the record to reflect this.").

## B.  Rules 8.4(c) and (d)

The ODC argues that White violated Rules 8.4(c) and (d) by converting funds to his own use that belonged to H&L.  Rule 8.4 provides, in pertinent part, that a lawyer may not (c) "engage in conduct involving dishonesty, fraud, deceit or misrepresentation;" or (d) "engage in conduct that is prejudicial to the administration of justice[.]"  *Rule of Prof'l Conduct* 8.4 [1995].

This Court is satisfied with the Board's findings that White did not violate Rules 8.4(c) or (d) because he did not convert funds belonging solely to H&L and because he reasonably believed that he had a legitimate claim to the social security disability fees.  This Court defines conversion as "the unauthorized use of entrusted funds for the lawyer's own purpose."  *Lawyer Disciplinary Bd. v. Kupec*, 202 W.Va. 556, 571, 505 S.E.2d 619, 634 (1998).  In *Kupec,* we specified that "[c]onversion occurs when a lawyer intentionally takes or uses client [or third party] funds for his own or the law firm's use."  *Kupec*, 202 W.Va. at 571, 505 S.E.2d at 634 (quoting ABA/BNA Lawyers' Manual on Prof'l Conduct § 45:501 [1993]).

The ODC did not offer clear and convincing proof that H&L solely and indisputably owned the social security disability funds, and therefore, failed to establish White converted the fees within the context of Rule 8.4.  We are therefore satisfied that White did not violate Rules 8.4(c) or (d).

13

## C. Sanctions

The *Rules of Lawyer Disciplinary Procedure* set out the guidelines for disciplining lawyer misconduct. Rule 3.15 allows this Court to impose the following sanctions: (1) probation, (2) restitution, (3) limitation on the nature or extent of future practice, (4) supervised practice, (5) community service, (6) admonishment, (7) reprimand, (8) suspension, or (9) annulment. *Office of Disciplinary Counsel v. Rogers*, 231 W.Va. 445, 448 n.1, 745 S.E.2d 483, 486 n.1 (2013). Rule 3.15 also allows this Court to impose payment of the costs of the disciplinary proceeding. *Rogers*, 231 W.Va. at 448 n.1, 745 S.E.2d at 486 n.1. Furthermore, Rule 3.16 requires us to consider the following factors in determining the appropriate punishment for misconduct:

> (1) whether the lawyer has violated a duty owed to a client, to the public, to the legal system, or to the profession; (2) whether the lawyer acted intentionally, knowingly, or negligently; (3) the amount of the actual or potential injury caused by the lawyer's misconduct; and (4) the existence of any aggravating or mitigating factors.

Syl. Pt. 4, *Office of Lawyer Disciplinary Counsel v. Jordan*, 204 W.Va. 495, 513 S.E.2d 722 (1998).

As to the first factor, we are satisfied with the Board's finding that White violated a duty to the profession, but not to a client, the legal system, or the public. *See Lawyer Disciplinary Bd. v. Ford*, 211 W.Va. 228, 230, 564 S.E.2d 438, 440 (2002) (holding lawyer did not breach a duty to a client, the legal system, or the public when he knowingly failed to turn over the fee checks that indisputably belonged to his firm). In regards to the second factor, neither party disputes that White acted knowingly and

14

intentionally. Thirdly, this Court affirms the Board's finding that there was no actual injury. This was a dispute between an associate and his law firm, and as the Board noted, the issue of whether there were any firm monies lost was an issue that was settled in H&L's civil litigation against White.

Finally, we consider whether any aggravating or mitigating factors were present. Aggravating factors are those that "may justify an increase in the degree of discipline to be imposed." Syl. Pt. 4, *Lawyer Disciplinary Bd. v. Scott*, 213 W.Va. 209, 579 S.E.2d 550 (2003). By contrast, mitigating factors are those that "may justify a reduction in the degree of discipline to be imposed." Syl. Pt. 2, *Scott*. We said in Syllabus Point 3 of *Scott* that this Court may consider the following as mitigating factors:

> (1) absence of a prior disciplinary record; (2) absence of a dishonest or selfish motive; (3) personal or emotional problems; (4) timely good faith effort to make restitution or to rectify consequences of misconduct; (5) full and free disclosure to disciplinary board or cooperative attitude toward proceedings; (6) inexperience in the practice of law; (7) character or reputation; (8) physical or mental disability or impairment; (9) delay in disciplinary proceedings; (10) interim rehabilitation; (11) imposition of other penalties or sanctions; (12) remorse; and (13) remoteness of prior offenses.

We agree that the following facts should mitigate White's punishment: the application of social security disability fees against the loan was the subject of a bona fide contract dispute, White had no prior disciplinary record, he lacked experience in the legal profession, and White lacked a dishonest or selfish motive. This Court also agrees

15

with the Board that there are no aggravating factors in this case, and on this record, we cannot clearly say that White acted with a dishonest or selfish motive.

This case is fundamentally different from those in which a lawyer knowingly misappropriated a third person's property. *See* Syl. Pt. 5, *Office of Disciplinary Counsel v. Jordan*, 204 W.Va. 495, 513 S.E.2d 722 (1998). *See also*, *Comm. on Legal Ethics v. Hess*, 186 W.Va. 514, 413 S.E.2d 169 (1991) (applying general rule that conversion warrants disbarment of lawyer who misappropriated funds belonging to his firm). Here, White reasonably believed, pursuant to a bona fide business dispute, that the social security disability fees were supposed to have been credited against his loan under his employment agreement with H&L.[9] We find the Board's findings as to White's violations and the appropriate sanctions to be satisfactory.

## IV.
## CONCLUSION

This Court concludes that White violated Rules 1.15(b) and (c), and we accept the Board's findings that White did not violate Rules 1.15(a), 8.4(c), or 8.4(d). We order that White (1) be reprimanded, (2) that he be ordered to take an additional six hours of Continuing Legal Education with a focus on law office management and ethics, and (3) that he be ordered to pay the costs of the disciplinary proceeding.

Reprimand and other sanctions.

---

[9] We wish to make clear that we are not, through the issuance of this opinion, endorsing a lawyer's decision to resort to self-help whenever a dispute between the lawyer and his or her firm arises over a poorly drawn employment agreement.