IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2013Term

**FILED**

**October 4, 2013**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 12-0608

LAWYER DISCIPLINARY BOARD,
Petitioner

v.

MICHAEL S. SANTA BARBARA, a member of the
West Virginia State Bar
Respondent

LAWYER DISCIPLINARY PROCEEDING

LICENSED SUSPENDED AND OTHER SANCTIONS IMPOSED

Submitted: September 10, 2013
Filed:  October 4, 2013

Andrea J. Hinerman, Esq.
Senior Lawyer Disciplinary Counsel
Office of Disciplinary Counsel
Attorney for the Petitioner

Robert H. Davis, Jr., Esq.
Harrisburg, Pennsylvania
Attorney for the Respondent

The Opinion of the Court was delivered PER CURIAM.

SYLLABUS BY THE COURT

1. "A *de novo* standard applies to a review of the adjudicatory record made before the Committee on Legal ethics of the West Virginia State Bar [currently, the Hearing Panel Subcommittee of the Lawyer Disciplinary Board] as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the Committee's recommendations while ultimately exercising its own independent judgment. On the other hand, substantial deference is given to the Committee's findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence of the whole record." Syl. Pt. 3, *Comm. on Legal Ethics of the W. Va. State Bar v. McCorkle*, 192 W. Va. 286, 452 S.E.2d 377 (1994).

2. "This Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions or annulments of attorneys' licenses to practice law." Syl. Pt. 3, *Comm. on Legal Ethics of the W. Va. State Bar v. Blair*, 174 W. Va. 494, 327 S.E.2d 671 (1984), *cert denied*, 470 U.S. 1028 (1985).

3. "Rule 3.16 of the West Virginia Rules of Lawyer Disciplinary Procedure enumerates factors to be considered in imposing sanctions and provides as follows: 'In imposing a sanction after a finding of lawyer misconduct, unless otherwise provided in these

i

rules, the Court [West Virginia Supreme Court of Appeals] or Board [Lawyer Disciplinary Board] shall consider the following factors: (1) whether the lawyer has violated a duty owed to a client, to the public, to the legal system, or to the profession; (2) whether the lawyer acted intentionally, knowingly, or negligently; (3) the amount of the actual or potential injury caused by the lawyer's misconduct; and (4) the existence of any aggravating or mitigating factors." Syl. Pt. 4, *Office of lawyer Disciplinary Counsel v. Jordan*, 204 W. Va. 495, 513 S.E.2d 722 (1998).

4.      "Where there has been a final criminal conviction, proof on the record of such conviction satisfies the Committee on Legal Ethics' burden of proving an ethical violation arising from such conviction." Syl. Pt. 2, *Comm. on Legal Ethics of the W. Va. State Bar v. Six*, 181 W. Va. 52, 380 S.E.2d 219 (1989).

5.      "Aggravating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify an increase in the degree of discipline to be imposed." Syl. Pt. 4, *Lawyer Disciplinary Bd. v. Scott*, 213 W. Va. 209, 579 S.E.2d 550 (2003).

6.      "Mitigating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify a reduction in the degree of discipline to be

imposed." Syl. Pt. 2, *Lawyer Disciplinary Bd. v. Scott*, 213 W. Va. 209, 579 S.E.2d 550 (2003).

7.    "Mitigating factors which may be considered in determining the appropriate sanction to be imposed against a lawyer for violating the Rules of Professional Conduct include:  (1) absence of a prior disciplinary record; (2) absence of a dishonest of selfish motive; (3) personal or emotional problems; (4) timely good faith effort to make restitution or to rectify consequences of misconduct; (5) full and free disclosure to disciplinary board or cooperative attitude toward proceedings; (6) inexperience in the practice of law; (7) character or reputation; (8) physical or mental disability or impairment; (9) delay in disciplinary proceedings; (10) interim rehabilitation; (11) imposition of other penalties or sanctions; (12) remorse; and (13) remoteness of prior offenses."  Syl. Pt. 3, *Lawyer Disciplinary Bd. v. Scott*, 213 W. Va. 209, 579 S.E.2d 550 (2003).

8.    "In deciding on the appropriate disciplinary action for ethical violations, this Court must consider not only what steps would appropriately punish the respondent attorney, but also whether the discipline imposed is adequate to service as an effective deterrent to other members of the Bar and at the same time restore public confidence in the ethical standard of the legal profession."  Syl. Pt. 3, *Comm. on Legal Ethics of the W. Va. State Bar v. Walker*, 178 W. Va. 150, 358 S.E.2d 234 (1987).

Per Curiam:

This lawyer disciplinary proceeding was brought against the Respondent Michael S. Santa Barbara by the Office of Disciplinary Counsel ("ODC") on behalf of the Lawyer Disciplinary Board ("LDB"). The ethical violations charged against Mr. Santa Barbara arose out of his no contest plea to one count of brandishing and one count of carrying a concealed weapon in the Magistrate Court of Berkeley County, West Virginia.[1] The Hearing Panel Subcommittee ("HPS") of the LDB determined, based upon stipulations offered by both parties, that Mr. Santa Barbara violated Rule 8.4(b)[2] and 8.4(d)[3] of the West Virginia Rules of Professional Conduct. The HPS recommended that this Court adopt the following discipline in this matter:

> A. That Respondent be suspended from the practice of law for a period of three (3) months. Further, that if this three (3) month period of suspension should commence while Respondent is still serving any part of his one (1) year suspension period in Supreme Court Case No. 10-

---

[1]The ODC also charged Mr. Santa Barbara with a violation of West Virginia Rule of Profession Conduct 8.4(c), alleging that Mr. Santa Barbara engaged in "conduct involving honesty, fraud, deceit or misrepresentation . . . . " The ODC and Mr. Santa Barbara jointly moved to dismiss this charge.

[2]Rule 8.4(b) of the West Virginia Rules of Professional Conduct provides that it is professional misconduct for an attorney to "commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects[.]"

[3]West Virginia Rule of Professional Conduct 8.4(d) provides that it is professional misconduct for an attorney to "engage in conduct that is prejudicial to the administration of justice[.]"

1

4011,[4] then this three (3) month suspension shall [begin to] run concurrently with said suspension from Supreme Court No.10-4011, provided that Respondent shall not petition for reinstatement until he has completed the three (3) month suspension assessed in the proceeding.

B. That Respondent shall continue with counseling as ordered in Supreme Court No. 10-4011 during this three (3) month suspension and that the treating counselor is directed to submit at least one (1) progress report to the Office of Disciplinary Counsel during this three (3) month period; and

C. That prior to petitioning to be reinstated to the practice of law that Respondent be required to pay the costs of these proceedings pursuant to Rule 3.15 of the Rules of Disciplinary Procedure.

(Footnote added).

  The Court did not concur with the HPS's recommended sanctions and the

---

[4]Mr. Santa Barbara's professional conduct was also at issue in *Lawyer Disciplinary Board v. Santa Barbara*, 229 W. Va. 344, 729 S.E.2d 179 (2012) ("*Santa Barbara I*"). Unlike the instant case, which does not involve any misconduct regarding clients, in *Santa Barbara I,* three complaints had been brought against the Respondent by clients and one complaint was filed by the ODC regarding a client. *Id.* at 346, 729 S.E.2d at 181. The allegations involved violations of the West Virginia Rules of Professional Conduct requiring attorneys to act with reasonable diligence, to communicate with clients, to keep clients reasonably informed and to properly oversee and manage client trust accounts. *Id.* at 345-49, 729 S.E.2d at 180-84. We ordered the following sanctions in *Santa Barbara I*: (1) suspension from the practice of law for a period of one year; (2) participation in psychological and/or psychiatric counseling during the period of suspension until such time that it is determined by the treating psychologist or psychiatrist that treatment is no longer necessary, with reports regarding the same submitted to ODC every six months; (3) completion of eight hours of continuing legal education in office management and office practice within the next twenty-four months with satisfactory proof of completion provided to the ODC; (4) supervised practice for one year upon reinstatement; and (5) reimbursement to the Board for costs incurred in the proceeding. *Id.* at 352-53, 729 S.E.2d at 187-88.

parties were ordered to file briefs. This matter was set for oral argument. Having considered the HPS's recommended sanctions, the stipulated findings of fact, conclusions of law and recommended discipline agreed to by both parties and adopted by the HPS, the additional findings made by the HPS, the parties' briefs and oral arguments, as well as all other matters of record, we agree with the recommended sanctions; however, we modify the three-month suspension of Mr. Santa Barbara's license to practice law so that it runs consecutive to the one-year suspension previously imposed by the Court in *Santa Barbara I*, a separate and distinct disciplinary action from the instant matter. *See* note 4 *supra*. In imposing a consecutive three-month suspension, the time for the three-month suspension began to run immediately following the conclusion of Mr. Barbara's one-year suspension, which was July 9, 2013, one year after this Court issued the mandate in *Santa Barbara I*. We further modify the recommended sanction regarding Mr. Santa Barbara's continued counseling by directing his treating counselor to submit at least one progress report to the ODC concerning counseling provided during the three-month suspension period.

## I.  Standard of Review

In *Committee on Legal Ethics of the West Virginia State Bar  v. McCorkle*, 192 W. Va. 286 452S.E.2d 377 (1994), this Court held in syllabus point three that

> [a] *de novo* standard applies to a review of the adjudicatory record made for the Committee on Legal Ethics of the West Virginia State Bar [currently, the Hearing Panel Subcommittee of the Lawyer Disciplinary Board] as to questions

3

of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the Committee's recommendations while ultimately exercising its own independent judgment. On the other hand, substantial deference is given to the Committee's finding of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record.

The foregoing standard of review recognizes that "[t]his Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions or annulments of attorneys' licenses to practice law." Syl. Pt. 3, *Comm. on Legal Ethics of the W. Va. State Bar v. Blair*, 174 W. Va. 494, 327 S.E.2d 671 (1984), *cert denied*, 470 U.S. 1028 (1985). Keeping the standard of review in mind, we proceed with an examination of the present case.

## II. Factual Background

Mr. Santa Barbara is a suspended member of the West Virginia Bar, who practiced in Martinsburg, West Virginia. He was admitted to The West Virginia State Bar on January 15, 1991.[5] He resided in the Whiting's Neck Subdivision in Berkeley County, West Virginia, and served as vice-president of the homeowners association for the

---

[5]The facts are taken from the HPS's March 1, 2013, Order, as well as the Court's review of the record in this case. *See* Order of Hearing Panel Subcommittee in Mitigation Hearing Recommending Adoption of Stipulations of Findings of Fact, Conclusions of Law and Recommended Discipline.

subdivision.  The subdivision included a recreational area along the Potamac River with a pavilion for private parties for community residents, as well as privately owned boat docks.

The subdivision had been beset by recurrent vandalism, destruction of property, and burglaries[6] over several years prior to the incident at issue in this case and had been subjected to its highest level of crime in 2011.[7]  The residents of the subdivision had become quite concerned about their own safety and the safety of their children and had been regularly communicating through an email network system in their homeowners association about the criminal activity. The residents had started a community watch system as a result of the increased criminal activity.

On the night of August 14 and the early morning hours of August 15, 2011, Mr. Santa Barbara and his family had just returned from vacation[8] and the electricity in much of

[6]The criminal activities that the subdivision and its property owners had experienced included mailbox vandalism, automobile break-ins, and destruction or damage to gated areas.

[7]Shortly before the incident giving rise to this disciplinary proceeding, strangers in a Jeep approached and frightened children who were immediate neighbors and friends of Mr. Santa Barbara and his family. The incident occurred in August, 2011, while the parents of the children were at work. The occupants of the Jeep drove onto common property of the subdivision where tennis courts and trash dumpsters are located and started screaming at the young children and telling the children to get off the property. A special homeowners association meeting was called on August 12, 2011, to address the incident. Mr. Santa Barbara did not attend this meeting as he was on vacation.

[8]While on vacation, the motion detection security device on the Santa Barbaras' home
(continued...)

5

the subdivision had been lost for reasons that are not apparent in record, including in the area where Mr. Santa Barbara resided. A resident in the subdivision, who lived near the riverfront area, called Mr. Santa Barbara seeking his assistance. The resident reported to Mr. Santa Barbara that a large crowd of unauthorized persons were at the riverfront area and that he heard loud conversation, girls screaming and what the resident thought were multiple gunshots. The resident had tried to reach other homeowners prior to calling Mr. Santa Barbara.

After receiving the call from the resident, Mr. Santa Barbara grabbed a handgun, placed it in the central glove compartment of his car, and drove to the riverfront area.[9] Once there, he took the handgun and a flashlight and went towards the crowd. Mr. Santa Barbara encountered a large group of individuals[10] in their late teens and early twenties, who were having a party.[11] A smaller group of men began to encircle Mr. Santa

---

[8](...continued)
was activated and Mr. Santa Barbara was alerted to the alarm on his cell phone. Mr. Santa Barbara contacted a neighbor who went to their home to investigate the alarm, but nothing was found.

[9]Mr. Santa Barbara's then sixteen-year-old daughter got into the vehicle with him. According to the testimony, she went with her father because she thought she might be able to identify some of the individuals.

[10]All but one of the group were trespassers and the party was not authorized by the homeowners association.

[11]Mr. Santa Barbara testified that approximately seventy youth were present.

6

Barbara and he testified that it was at that time, when the crowd was surrounding him in a threatening manner, that he raised the handgun over his head. He only displayed the handgun as a warning, but he did not aim it at anyone or fire any shots.[12]

The morning after this incident, Mr. Santa Barbara apologized to the homeowners association and resigned from his position as vice-president. He also fully cooperated with the police in the investigation.

As a result of the incident, on September 13, 2011, Mr. Santa Barbara was charged with five misdemeanor counts of brandishing a deadly weapon and one misdemeanor count of battery. On April 16, 2012, he pleaded no contest to one count of brandishing and one count of carrying a concealed weapon. Mr. Santa Barbara was sentenced to thirty days in jail on the brandishing count, but was given an alternative sentence of fifty hours of community service to be served in lieu of serving jail time. He was also fined $500 and ordered to pay court costs. He was ordered to pay court costs on the concealed weapon

---

[12]The original Order of Hearing Panel Subcommittee in Mitigation Hearing Recommending Adoption of Stipulations of Findings of Fact, Conclusions of Law and Recommended Discipline, initially had provided that Mr. Santa Barbara, "discharged the handgun as a warning, but did not aim the gun at anyone or shoot anyone." This finding was amended by a Stipulated Agreed Order entered by the HPS on March 19, 2013, to indicate that Mr. Santa Barbara only displayed the handgun, but did not aim the weapon at anyone or fire the weapon at anyone. The order noted that the original finding was not supported by the record.

7

charge.

On May 16, 2012, as a result of Mr. Santa Barbara's no contest plea, the ODC filed a Petition Seeking Suspension of Respondent's Law License Pursuant to Rule 3.18 of the Rules of Disciplinary Procedure.[13] On June 8, 2012, Mr. Santa Barbara answered the ODC's petition and requested a mitigation hearing. In September 2012, prior to the mitigation hearing, the parties entered into "Stipulations Regarding Findings of Fact, Conclusions of Law and Recommendation as to Discipline," in which Mr. Santa Barbara admitted to violating the West Virginia Rules of Professional Conduct. A mitigation hearing was held on October 10, 2012.

> As a result of the hearing, the HPS found that Mr. Santa Barbara
>
> did not forward to the Office of Disciplinary Counsel, as required by Rule 3.18(a) of the Rules of Professional Conduct, a copy of the order of judgment within thirty (30) days of the entry of the same. Rule 3.18(a) of the Rules of Professional Conduct further provides that "Failure to forward a copy shall constitute an aggravating factor in any subsequent disciplinary proceeding." However, Respondent's criminal counsel had been in contact with the Office of Disciplinary Counsel regarding the

---

[13]Rule 3.18 provides that "[a] plea or verdict of guilty or a conviction after a plea of nolo contendere shall be deemed to be a conviction within the meaning of this rule." *Id*. Additionally, "[a] lawyer shall be deemed to have been convicted within the meaning of this rule upon the entry of the order or judgment of conviction and such lawyer's license may be suspended or annulled thereupon notwithstanding the pendency of an appeal from such conviction." *Id*.

criminal charges prior to the date of his conviction.

The HPS further stated that

> [w]ith respect to aggravating facts, the HPS acknowledges that Respondent, within the month before the instant events, had been disciplined by the Supreme Court of Appeals of West Virginia for prior violations of the Rules of Professional Conduct involving his law practice and his clients, for which the Respondent had received a one year suspension and other conditions which he must meet before applying for readmission. He was an experienced lawyer at the time of the events in the current matter.

> Regarding mitigating facts, the HPS found that it was

> of the opinion that he [referring to Mr. Santa Barbara] very likely would have been acquitted had he chosen to contest the charges given the background of events leading up to his confrontation with the young people at the party, because he was acting out of concern for his safety and property and that of the others in the subdivision, not for a criminal purpose.

The HPS added:

> In fact, the Respondent's actions that night were generally appreciated because the vandalism and criminal activity in Whiting's Neck stopped after the incident and the media publicity which followed. At a minimum, the public opinion in his subdivision about lawyers certainly was not adversely affected by Respondent's behavior, although the media accounts of the story may have had some adverse effect in the wider community area where the story was circulated. ODC offered no rebuttal testimony to controvert the evidence of the impact Respondent's actions may have had on the public's perception about lawyers not Respondents' fitness to practice law.

9

Based upon the legal conclusions stipulated by the parties, as well as the additional legal conclusions made by the HPS, the HPS determined that

> [t]he facts surrounding the Respondent's violations of the Rules of Professional Conduct which are detailed above mitigate against greater discipline than that to which the parties have stipulated. Respondent was contrite, immediately resigned from his position as an officer with the owners' association, fully cooperated with law enforcement, and did not contest the criminal charges against him, even though he likely would have been acquitted by a jury. Furthermore, the evidence adduced at the hearing established that Respondent is fully cooperating with the mandate issued in the prior disciplinary proceeding and is receiving the required counseling. A three month suspension running concurrently with the previous disciplinary order will suffice in balancing the interests of the public with the need for discipline for violations committed by the Respondent.

Because this Court did not concur with the recommended discipline made by the HPS, the matter is now before us.

## III. Discussion

The only issue before the Court concerns the appropriate sanction for Mr. Santa Barbara's conduct. The ODC requests that the Court uphold the sanctions recommended by the HPS, including a three-month concurrent suspension and continued counseling as ordered by the Court in *Santa Barbara I*. *See* 229 W. Va. at 352-53, 729 S.E.2d at 187-88. Mr. Santa Barbara, however, argues that because his one-year suspension in *Santa Barbara I* is complete, a reprimand is the more appropriate sanction. *See id.*

10

In reviewing what sanctions are warranted in this matter, we rely on our prior holding in syllabus point four of *Office of Lawyer Disciplinary Counsel v. Jordan*, 204 W. Va. 495, 513 S.E.2d 722 (1998):

> Rule 3.16 of the West Virginia Rules of Lawyer Disciplinary Procedure enumerates factors to be considered in imposing sanctions and provides as follows: 'In imposing a sanction after a finding of lawyer misconduct, unless otherwise provided in these rules, the Court [West Virginia Supreme Court of Appeals] or Board [Lawyer Disciplinary Board] shall consider the following factors: (1) whether the lawyer has violated a duty owed to a client, to the public, to the legal system, or to the profession; (2) whether the lawyer acted intentionally, knowingly, or negligently; (3) the amount of the actual or potential injury caused by the lawyer's misconduct; and (4) the existence of any aggravating or mitigating factors.

We first examine whether Mr. Santa Barbara violated a duty owed to a client, the public, to the legal system or to the profession. *Jordan*, 204 W. Va. at 497, 513 S.E.3d at 724. Mr. Santa Barbara pleaded no contest to brandishing and carrying a concealed weapon. "Where there has been a final criminal conviction, proof on the record of such conviction satisfies the Committee on Legal Ethics' burden of proving an ethical violation arising from such conviction." Syl. Pt. 2, *Comm. on Legal Ethics of the W. Va. State Bar v. Six*, 181 W. Va. 52, 380 S.E.2d 219 (1989). He, therefore, has violated his duty to the public and the profession by being convicted for committing a criminal act. *See Jordan*, 204 W. Va. at 497, 513 S.E.2d at 724. Thus, the HPS was correct in its finding that Mr. Santa Barbara "did not violate any duty to clients in this matter. However, he violated his duty to

11

the public and the profession in that he committed a criminal act and has been convicted of a criminal act."

The second factor considered by the Court is whether Mr. Santa Barbara acted intentionally, knowingly or negligently. *See id.* We readily dispense with this factor as Mr. Santa Barbara stipulated that he "acted in an intentional manner."

The third factor we examine involves that amount of the actual or potential injury caused by the lawyer's misconduct. *See id.* The HPS adopted the following stipulation by the parties on this issue: "Respondent's misconduct did not cause any actual injury to any clients but his actions had the potential to injure the reputation and integrity of the profession." The HPS also found that "[a]lthough no injuries resulted from Respondent brandishing the handgun, there certainly was the potential that someone may have been harmed or seriously injured if the situation accelerated that evening." We agree that there existed a very great risk not only of bodily injury or death, but of injury to the reputation and integrity of the profession as a result of Mr. Santa Barbara's actions.

Finally, we consider the existence of any aggravating or mitigating factors. *See id.* "Aggravating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify an increase in the degree of discipline to be imposed." Syl. Pt. 4, *Lawyer*

*Disciplinary Bd. v. Scott*, 213 W. Va. 209, 579 S.E.2d 550 (2003). Conversely, "[m]itigating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify a reduction in the degree of discipline to be imposed." *Id.*, Syl. Pt. 2. In syllabus point three of *Scott*, we held

> Mitigating factors which may be considered in determining the appropriate sanction to be imposed against a lawyer for violating the Rules of Professional Conduct include: (1) absence of a prior disciplinary record; (2) absence of a dishonest of selfish motive; (3) personal or emotional problems; (4) timely good faith effort to make restitution or to rectify consequences of misconduct; (5) full and free disclosure to disciplinary board or cooperative attitude toward proceedings; (6) inexperience in the practice of law; (7) character or reputation; (8) physical or mental disability or impairment; (9) delay in disciplinary proceedings; (10) interim rehabilitation; (11) imposition of other penalties or sanctions; (12) remorse; and (13) remoteness of prior offenses.

*Id*. at 210, 579 S.E.2d at 551.

The aggravating factors in Mr. Santa Barbara's case included his failure to report his conviction in magistrate court in a timely manner, his prior disciplinary action for which he was suspended for a year from the practice of law, and his substantial experience in the practice of law. As we stated in *Office of Disciplinary Counsel v. Rogers*, 231 W. Va. 445, 745 S.E.2d 483 (2013):

> [s]ubstantial experience is deemed to be an aggravating factor, while lack of experience as a lawyer is considered to be a mitigating factor. The distinction is made in recognition of the fact that "a youthful and inexperienced attorney may have

13

> [engaged in misconduct] as a result of inexperience rather than as a result of deliberate calculation." *In re Brown*, 166 W. Va. 226, 235, 273 S.E.2d 567, 572 (1980).

*Rogers*, 231 W. Va. at 452, 745 S.E.2d at 491.

The mitigating factors included Mr. Santa Barbara's compliance with the sanctions issued by this Court in *Santa Barbara I*. Further, the HPS found that he was "contrite, immediately resigned from his position as an officer with the owner's association, fully cooperated with law enforcement, and did not contest the criminal charges against him, even though he likely would have been acquitted by a jury."

The HPS found that the facts in this case "mitigate against greater discipline than to which the parties have stipulated." Consequently, the HPS recommended to the Court

> that some discipline is warranted under the facts giving rise to this proceeding, but the HPS concludes that the mitigating factors outweigh the aggravating facts in this matter and it urges the Supreme Court to adopt in its entirety the recommended discipline set forth in the Stipulation of the parties.

As the Court previously held:

> In deciding on the appropriate disciplinary action for ethical violations, this Court must consider not only what steps would appropriately punish the respondent attorney, but also whether the discipline imposed is adequate to serve as an effective deterrent to other members of the Bar and at the same time restore public confidence in the ethical standards of the

14

legal profession.

Syl. Pt. 3, *Comm. on Legal Ethics of the W. Va. State Bar v. Walker*, 178 W. Va. 150, 358 S.E.2d 234 (1987). Based upon our review of all the factors, we find that the recommended sanctions made to the Court by the HPS in its March 1, 2013, order are appropriate in this case. We, however, modify the three-month suspension of Mr. Santa Barbara's license to practice law so that the suspension runs consecutive to Mr. Santa Barbara's one-year suspension previously imposed by the Court in *Santa Barbara I*.[14] *See* 229 W. Va. at 352-53, 729 S.E.2d 187-88. This sanction will accomplish the goals of punishing the conduct engaged in by Mr. Santa Barbara, deterring other lawyers from engaging in similar conduct, as well as restoring public confidence in the standards of our profession. *See Walker*, 178 W. Va. at 150, 358 S.E.2d. at 234, Syl. Pt. 3.

## IV. Conclusion

For the foregoing reasons, the Court adopts the recommendations made by the HPS, as modified, and *imposes* the following sanctions in this matter: 1) that Mr. Santa Barbara is suspended from the practice of law for a period of three months, with the period of three months commencing at the conclusion of the prior one-year suspension, which was July 9, 2013, one year after this Court's mandate in *Santa Barbara I* issued, *see* 229 W. Va.

---

[14]Additionally, we modify the condition for Mr. Santa Barbara's treating counselor to submit a progress report to the ODC as set forth *infra* in section IV. of this opinion.

344, 729 S.E.2d 179; 2) that Mr. Santa Barbara shall not petition for reinstatement until he has completed the three-month suspension assessed in this proceeding; 3) that Mr. Santa Barbara shall continue with counseling as ordered in *Santa Barbara I* during the three-month suspension and that the treating counselor is directed to submit at least one progress report to the ODC concerning counseling provided during the three-month period; and 4) that prior to petitioning to be reinstated to the practice of law, Mr. Santa Barbara is required to pay the costs of these proceedings pursuant to Rule 3.15 of the West Virginia Rules of Disciplinary Procedure.

The Clerk of the Court is directed to issue the mandate forthwith, thereby shortening the time for issuance of the mandate in accordance with Rule 26(b) of the West Virginia Rules of Appellate Procedure and eliminating the opportunity for any petition for rehearing to be filed in this matter in accordance with West Virginia Rules of Appellate Procedure 25.

Law license suspended and other sanctions imposed.